UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | |
| | ) | 22-cr-10313-DJC |
| KEVIN BLACKMORE, | ) | |
| | ) | |

**Government Sentencing Memo**

The United States Government submits this Sentencing Memorandum in the above-captioned case, currently scheduled for sentencing on June 29, 2023. The Government believes that the sentence contemplated in the Plea Agreement dated February 17, 2023, a period of imprisonment of 30 months to be followed by three years of supervised release, is the appropriate sentence in this matter.

**I. Procedural History**

On November 17, 2022, a Federal Grand Jury sitting in Boston, Massachusetts returned a one-count Indictment charging Kevin Blackmore ("Blackmore") with being a previously convicted felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

On March 7, 2023, Blackmore pled guilty to this Indictment pursuant to a binding plea agreement, Rule 11(c)(1)(C).

**II. FACTS**

The facts as stated in the Pre-Sentence Report dated 5/26/23 and revised on 06/22/23 ("PSR"), appear to be uncontested.

On June 19, 2022, at approximately 4:00 am the Sharon Police Department (SPD), dispatched two units to a hotel in Sharon, Massachusetts, in response to a call for a possible incident of domestic violence. Officers responding to the scene observed two vehicles attempting to exit the hotel's parking lot. Officers believed the vehicles matched the description provided by SPD dispatch of the vehicles involved in the alleged domestic violence incident. Officer Canuto approached the first vehicle, whose sole occupant was an adult female ("Person 1"). According to reports, Person 1 indicated that she needed police assistance in collecting her personal items from her boyfriend, who she identified as Kevin Blackmore, 45, the driver of the other vehicle. Person 1 believed the items were in a large black duffle bag in Blackmore's vehicle and provided officers with a small list of her personal items. Officer Cadogan approached the second vehicle, whose sole occupant and driver was Person 1's boyfriend, Blackmore. Officer Cadogan informed Blackmore that he needed to return the personal items. During the encounter the officer observed a number of black bags in the rear passenger compartment of the vehicle and later in the trunk of that car. Upon searching one of the bags in the rear passenger compartment Officer Cadogan observed what appeared to be the black butt-end of a firearm in plain view. Officer Cadogan slowly stepped back from the vehicle, closed the rear passenger door, and informed Officer Canuto of his observation. At this point officers determined, via SPD dispatch, that Blackmore did not possess any type of valid firearms license. Officers placed Blackmore under arrest, advising him of the nature of the arrest, and of his rights.

A subsequent search of the Blackmore's vehicle resulted in the recovery of the firearm initially observed in Blackmore's gym backpack by officers; a black Smith and Wesson .45 caliber semi-automatic firearm with serial number NLP9604. In addition, officers recovered a second firearm, a Taurus .9mm semi-automatic firearm with serial number ACH160299, located

in a black duffle bag behind the driver's seat of Blackmore's vehicle. Also located by officers in their search of Blackmore's vehicle were 67 rounds of .9mm ammunition and 80 rounds of .45 caliber ammunition.

Neither the Taurus Firearm, nor the Smith & Wesson Firearm, nor the various rounds of .45 caliber and .9mm ammunition recovered from Blackmore were commercially manufactured in Massachusetts and thus necessarily crossed one or more state lines before being found in Blackmore's possession on June 19, 2022 and thus travelled in interstate commerce.

In addition, a review of Blackmore's criminal history reveals that he has several convictions for crimes punishable by imprisonment for a term exceeding one year, including convictions for assault and battery, assault with a dangerous weapon, violation of restraining order, and firearms violation. In addition, Blackmore's record shows that he has been named as the defendant in nine Abuse Prevention Orders issued to eight different women by various state courts pursuant to MGL c. 209A, therefore, prior to possessing the Taurus and Smith and Wesson firearms and the .9mm and .45 caliber ammunition, Blackmore knew he had previously been convicted of a crime(s) punishable by more than one year in prison.

### III. GUIDELINE ANALYSIS

The Government agrees with the guideline analysis as determined by U.S. Probation in the Presentence Investigation Report ("PSR") dated 6/22/23.

   A.  **Offense Level Computation**

      **¶ 15 Base Level Offense**

The Government agrees that the Base Offense Level is 20.

      **¶¶ 22 & 23 Acceptance of Responsibility**

Blackmore has clearly demonstrated acceptance of responsibility for the offense. Accordingly, the offense level is decreased by three levels. USSG § 3E1.1(a) and (b).

### ¶ 24 Total Offense Level

The Government agrees with Probation's conclusions that with prompt acceptance of responsibility, the Total Offense Level is 17.

### Part B. Blackmore's Criminal History

### ¶¶ 26 - 39

The Government agrees with Probation's conclusion that Blackmore's total criminal history score is 4, which establishes a criminal history category of III.

### Part D. Sentencing Options

### ¶ 75 Guideline Provisions

Based on the total offense level of 17 and a criminal history category of III, the guideline imprisonment range is 30 to 37 months.

### ¶ 76 Impact of Plea Agreement

Finally, as there is a binding plea agreement, pursuant to Rule 11(c)(1)(C), the parties have agreed to a disposition of 30 months' imprisonment, three years of supervised release, and a special assessment of $100, as well as forfeiture.

## IV. SENTENCING RECOMMENDATION

Title 18 U.S.C. § 3553(a) requires that a sentencing Court consider specific enumerated factors when determining an appropriate sentence. These factors include: 1) the nature and circumstances of the offense as well as the history and characteristics of the defendant; and 2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the

law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide for the needs of the defendant.

The Government believes that a sentence of 30 months' imprisonment with three years' supervised release is fair and just and takes into account the factors enumerated in 18 U.S.C. § 3553(a). The Government acknowledges that while 30 months' imprisonment to be followed by three years of supervised release is a severe penalty. However, the facts and circumstances of this case, and Blackmore's history require and support such a sentence.

Blackmore has an extensive record of convictions in both Massachusetts and in Georgia. This is outlined in the PSR and can be reviewed in his lengthy Criminal Offender Records. These convictions commenced in 1996 and continued almost uninterrupted until Blackmore's arrest on this instant matter in June of 2022. Blackmore has multiple convictions for violent behavior (12 convictions across 6 separate dates of conviction); nine restraining orders involving eight different women; and a prior conviction for illegal possession of a firearm in 2009. Blackmore has been placed on probation on numerous occasions and has been sentenced to terms of imprisonment.

The PSR also outlines countless charged cases, many of which appear to be domestic assault related, which ended up being dismissed (PSR ¶¶ 26-55). This pattern is also present in the instant case before the Court, which was generated initially by police response to a domestic incident in progress at a hotel in Sharon.

The Government is mindful of the many personal issues Blackmore faced as a young adult and notes the trauma of his childhood, which led to his struggles as an adult. The Government has factored this history in when crafting its recommendation. The result of this

balance is the Government's recommendation at the low end of the advisory guidelines. The Government further requests that during any period of incarceration imposed by this Court, that Blackmore take advantage of any counseling for mental health issues related to his past trauma and articulated depression and participate in any and all vocational or educational opportunities; Blackmore having left school in the 10th grade. It is the Government's hope that by taking advantage of this programing he can start the process of turning his life around.

### V. CONCLUSION

The proposed sentence while significant, is driven by Blackmore's criminal history and the decision he made on June 19, 2022 to decide to carry loaded firearms and numerous rounds of ammunition in his vehicle. This sentence and period of supervised release sends a clear message that this type of behavior cannot and will not be accepted. The Government's recommendation of a term of imprisonment of 30 months, to be followed by three years of supervised release, and a special assessment of $100 is both fair and just.

Respectfully submitted,

JOSHUA S. LEVY
Acting United States Attorney

By:   */s/ Luke A. Goldworm*
LUKE A. GOLDWORM
Assistant U.S. Attorney

CERTIFICATE OF SERVICE

      This is to certify that I have this day served upon US Probation and counsel of record a copy of the foregoing document by ECF notice and email.

      /s/ **_Luke A. Goldworm_**
      Luke A. Goldworm
      Assistant U.S. Attorney